OPINION OF THE COURT
Chief Judge Cooke.
The warrantless police search and seizure of a parcel at its Kennedy Airport destination, when viewed in conjunction with a prior valid search and seizure accomplished at an airline terminal in Los Angeles and the continuity of police control throughout, was not constitutionally offensive.
Defendant was arrested at Kennedy after she retrieved a package shipped by air to her from California. The package was seized, her handbag was searched and narcotics were found in both. There followed an indictment for two counts of criminal possession of a controlled substance in the third degree, two for such possession in the seventh degree and one for unlawful possession of marihuana.
 Based on allegedly improper police activity prior to her arrest, defendant sought to suppress the physical evidence found in her possession. She was successful at Criminal Term as to the bundle’s contents, but the Appellate Division modified so as to deny suppression in the entirety.[1] There should be an affirmance.
At the suppression hearing, the events leading to defendant’s arrest were related by Officer David McCarthy of the Queens Narcotics Bureau. A report of the Los Angeles Police Department, dated October 21, 1977, describing the events in California was also received. Without objection, McCarthy testified that on October 21 a message was received from an agent of the Federal Drug Enforcement Administration notifying the Queens bureau of the shipment to New York of a quantity of narcotics from Los Angeles addressed to "J. Adler” on United Airlines flight No. 8 scheduled to arrive that evening. Following receipt of this message, a member of the Queens bureau contacted Los Angeles Police Officer Lott, the source of the Drug Enforcement Administration report, to *735 obtain additional information about the shipment. Lott described the package in detail and recounted how the contraband was discovered. A United Airlines employee in Los Angeles, one Orr, informed Lott that an individual had delivered the package for shipment, stating that it contained a vase. The individual appeared nervous and Orr, becoming suspicious, X-rayed the package. Suspecting hazardous material, Orr opened the package and discovered a large quantity of pills. So apprised, Officer Lott proceeded to the Los Angeles airport and took custody of the package. Laboratory analysis disclosed the presence of amphetamines and barbituates. Lott thereafter inscribed his initials, a number and the date on the inside of the package and returned it to the carrier for shipment to New York.
McCarthy and two fellow officers were present at Kennedy when United flight No. 8 touched down at 8:45 p.m. No inquiries concerning the package were made by 11?30 that evening. McCarthy then opened the item and discovered a quantity of pills, which he recognized as amphetamines and barbituates, as well as the markings placed by Officer Lott. McCarthy delivered the container to the police precinct and had the drugs analyzed. United’s personnel were instructed to inform anyone making inquiries about the package that it had been lost in transit and was being traced. Following several inquiries, the consignee was told that the package could be picked up in the afternoon of October 24. That afternoon, defendant appeared at the airport to claim the package and, upon signing for the package and taking possession of it, she was arrested and searched. Found in defendant’s pocketbook were a capsule, a pill and a small quantity of marihuana.
Crediting the People’s evidence, Criminal Term concluded that the New York police had probable cause to arrest defendant and seize the package and that the initial search of it in Los Angeles was proper. However, the subsequent search in New York without a warrant, two days prior to defendant’s arrest, was held improper. Determining that probable cause to arrest existed independent of the tainted search and that the search of defendant’s pocketbook was valid as incident to a lawful arrest, Criminal Term suppressed only the evidence found in the package.
On appeal by the People pursuant to CPL 450.20 (subd 8) and 450.50, the Appellate Division agreed that the inspection of the package by the airline agent and the Los Angeles officer *736 was proper. The court ruled in addition that the subsequent action of the New York police was also permissible on the theory that the New York events were simply a continuation of the lawful seizure in Los Angeles and, consequently, the motion to suppress the contents of the package was denied.
 Considered as a search discrete from that in Los Angeles, the New York police action was violative of the Fourth Amendment proscription against warrantless searches. Certainly, defendant had a legitimate privacy interest in the contents of the package addressed to her (see United States v Van Leeuwen, 397 US 249). Armed with ample information to support a probable cause determination, the police undoubtedly could have obtained a warrant. At least the initial search, effected two days prior to defendant’s arrest, cannot be justified as an incident thereto (see Coolidge v New Hampshire, 403 US 443, 457; compare People v De Santis, 46 NY2d 82; United States v Garcia, 605 F2d 349). Nor is there justification in the People’s claim of exigency based on the arrival of the flight and the desire to avoid alerting the recipient. Even if such a claim were valid, the argument loses force when viewed in light of the apparent lack of concern for delay, as evidenced by the instruction simply to inform persons inquiring of the package that it had been lost and was being traced. However, assuming that the seizure of the package could be justified by some exigency existing in New York, the warrant-less search of the package following the seizure was improper. At that point, no demanding circumstances existed to justify an immediate search, for the property then was within the control of the police. And, where exigency is employed to justify a seizure but the threat of harm or of destruction of evidence has been neutralized by police dominion over the property, the Fourth Amendment mandates the intervention of a detached Magistrate and the issuance of a warrant before there occurs a further intrusion on an individual’s privacy interests (Arkansas v Sanders, 442 US 753; United States v Chadwick, 433 US 1).
While the New York warrantless search, standing alone, cannot be supported, that search must be viewed in connection with the antecedent search and seizure in Los Angeles, which, as both courts below found, was properly effected.[2] It is *737 well settled that a search by a private person, even an unlawful search, does not implicate Fourth Amendment considerations (People v Gleeson, 36 NY2d 462, 465; People v Horman, 22 NY2d 378, 381-382; Burdeau v McDowell, 256 US 465, 475). True, private conduct may be so imbued with governmental involvement that it loses its character as such and calls into play the full panoply of Fourth Amendment protections (see People v Esposito, 37 NY2d 156, 160; Corngold v United States, 367 F2d 1), but here there was no governmental involvement until after the private search revealed the presence of contraband. The agent’s action, taken not in furtherance of some objective of the government but on behalf of the airline, was private conduct not subject to Fourth Amendment challenge (see People v De Santis, 46 NY2d 82, supra; United States v Pryba, 502 F2d 391, 398, cert den 419 US 1127).* *[3]
Nor did the airline employee become an agent of the police merely by surrendering the package to Officer Lott. A citizen who discovers contraband in his private capacity does not become a police agent simply by relinquishing the suspected contraband to the authorities. Here, the existence of illicit drugs had been discovered in the course of a private search; any invasion of defendant’s privacy interests was complete at that point. No new or different search was effected by the immediate surrender to and inspection by the police officer (see United States v McDaniel, 574 F2d 1224, cert den 441 US 952; United States v Blanton, 479 F2d 327). Indeed, the Fourth Amendment simply was not implicated by the voluntary transfer of the package to the police, for no governmental seizure in the constitutional sense exists in such a situation (see United States v Sherwin, 539 F2d 1, cert den 437 US 909). The police did not go beyond the private search when they examined the contents of the package (cf. Walter v United States, 447 US —, 48 USLW 4807 [Stevens and Stewart, JJ.]).[4] It is thus immaterial whether the airline agent knew or *738 reasonably suspected the illicit nature of the package’s contents, or whether the package remained open when the police arrived in response to the agent’s call (see United States v Blanton, 479 F2d 327, 327-328, supra [airline employees suspected but were not sure that the object found in an attaché case was a silencer for a firearm]). This case does not involve a closed container in the constitutional sense, for the container in which the drugs were found had been opened and examined by the airline agent. The police intruded upon no privacy interest not already invaded by the private party and thus lawfully seized the evidence proffered.
Regarding the New York police conduct as a continuation of the episode in California, there is no infirmity. When the Los Angeles police took custody of the property, the package legitimately was withdrawn from the stream of transit from the sender to the addressee and was lawfully under the control of the Los Angeles Police Department. Although that department thereafter sent the package on to New York, in no sense was the property returned to the original stream of transit. Rather, described in detail and marked by the Los Angeles inspector, it continued on to New York effectively under the dominion of the authorities. That the identity of the authority exerting control changed upon arrival of the parcel does not signify a break in the police chain of dominion. There can be no meaningful distinction between the events as they occurred and a situation where a police officer accompanies the package, physically transfers the property to another officer who examines it and thereafter sees it delivered to the intended recipient. Nor does the relinquishment of physical possession to United Airlines for the flight to New York serve to break the chain, for the police exerted control over the package both before and after the flight with no other intervening events. Thus, when the New York police searched the package, there was no independent intrusion requiring a warrant, but simply a continuation of the valid search and *739 seizure effected in Los Angeles (see United States v De Berry, 487 F2d 448; United States v Ford, 525 F2d 1308; McConnell v State, 595 P2d 147 [Alaska], cert den sub nom. McConnell v Alaska, 444 US 918; State v Pohle, 166 NJ Super 504, cert den 81 NJ 328).
Of course, not all searches of this nature can be so justified. The control exerted by the police after an initial search must remain effectively unbroken. If by a break the property returns to the original stream of transit, the police may not search or seize the property in the absence of independent justification cognizable under the Fourth Amendment (see United States v Edwards, 602 F2d 458, 467, n 9). The property here, however, once lawfully seized and under continuous police control, simply was permitted to come into the suspect’s hands as bait in a trap set not by the police but apparently by the suspect herself. Under the circumstances presented, there was no constitutional infirmity.
Accordingly, the order of the Appellate Division should be affirmed.

. The Appellate Division dismissed defendant’s cross appeal concerning the denial of the motion to suppress the evidence found in her handbag on the ground that no statutory authority supported such an appeal. There was no error in this respect (see CPL 450.10, 450.15; compare CPL 450.20, subd 8).

. We note the dissent’s dissatisfaction with the hearing procedure in this case. At no time, however, has defendant urged that her due process rights were violated by the use of hearsay. Indeed, there was no objection to the presentation of proof and no *737 request either for the production of the airline agent or Officer Lott or for an adjournment to contact these witnesses. Thus, we need not pass upon the procedural questions suggested by the dissent.

. The dissent disputes the validity of the finding that the agent acted in the interest of the airline rather than the authorities. However, that finding, affirmed by the Appellate Division, is supported by the record and should not now be disturbed. Particularly in the absence of some basis for believing that the agent acted at the behest of the police, the People were not required to negate further the possibility of a police motive.

. That the drugs were subjected to laboratory analysis does not alter the nature of *738 the seizure. The drugs, the nature of which was reasonably self-evident, were already lawfully in the possession of the police. Unless we are prepared to hold that there is a reasonable and justifiable expectation of privacy in the contents of a pill capsule, it cannot be said that an intrusion into privacy interests was effected by scientifically examining the drugs. Indeed, to read Walter to require a warrant at this point would result in a mandate that the police obtain a warrant whenever legally seized drugs are to be subjected to analysis. We do not read Walter, involving as it did First Amendment considerations and a general exploratory viewing of films contained within separate sealed boxes, as compelling that result.