■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WALTER BUTLER, Appellant. — Appeal by defendant from a judgment of the County Court, Nassau County, rendered June 6, 1977, convicting him of murder in the second degree, manslaughter in the first degree and attempted robbery in the first degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of defendant's motion to suppress certain oral and written evidence and physical evidence seized by the police. Judgment reversed, on the law, motion to suppress statements and evidence granted (except insofar as defendant seeks to suppress his coat), and new trial ordered. The central issues on this appeal are (1) whether defendant's statements to the police and certain evidence seized by the police should have been suppressed as the products of an illegal arrest and, alternatively, (2) whether defendant's statements should have been suppressed as the product of an uncounseled interrogation. On November 29, 1976, at about 5:00 P.M., two Nassau County detectives entered the kitchen of the Starlight Diner in Levittown, where defendant was employed as a dishwasher, and identified themselves to defendant. They immediately read defendant the *Miranda* warnings, informed him that he was a "prime suspect in a crime that was committed in Freeport", and made arrangements for defendant to accompany them to the Baldwin precinct by having his employer release defendant early from work and pay defendant salary due him. The detectives searched defendant, escorted him to the police car, and helped him inside. Defendant at this point was being detained for custodial interrogation; any innocent individual in defendant's position would have reasonably thought so (see *People v Yukl*, 25 NY2d 585, cert den 400 US 851). Since detention for custodial interrogation intrudes upon interests protected by the Fourth Amendment and triggers the traditional safeguards against illegal arrest, defendant's detention must be supported by probable cause (see *Dunaway v New York*, 442 US 200, 214-216). Testimony for the prosecution at the suppression hearing established that defendant's detention was based upon information given to the police by the "Freeport community". According to this information, defendant and three companions — Richard Gray, Jerry Knowell and Charles Clayborne — frequented the Freeport railroad station and were involved in a homicide which had occurred at the station in the early morning hours of November 25, 1976. It was learned from the community that defendant, Knowell and Clayborne had served as lookouts while Gray fatally stabbed one Julio Pereira. The specific source or sources of this information, however, was not disclosed by any of the prosecution's witnesses who testified at the suppression hearing. It is well established that in order for an informant's statement to establish probable cause sufficient to justify a custodial detention, the two-prong test set forth by the United States Supreme Court in *Aguilar v Texas* (378 US 108, 114) must be satisfied. There must appear in the record "(1) some of the underlying circumstances from which the informant concluded that ille-

gal activities were taking place, and (2) some of the underlying circumstances from which the officer concluded that the informant was credible or reliable" *(People v Wirchansky,* 41 NY2d 130, 131; see, also, *People v Elwell,* 50 NY2d 231, 234; *People v Earley,* 76 AD2d 335). Neither prong of the *Aguilar* test was satisfied in the case at bar, as the record is completely barren with respect to (1) the basis of knowledge of the informant or informants, and (2) any indicia of their reliability. Prior to defendant's detention, the police also possessed information provided by witnesses that two to four black youths were seen in the vicinity of the Freeport railroad station around the time of the homicide. This information, however, is clearly insufficient to corroborate the information offered by the "community", as such observations were not indicative of criminal activity and did not establish defendant's presence at the scene of the crime (see *People v Elwell, supra).* Finally, prior to defendant's detention, the police were aware of the fact that defendant faced a pending unrelated robbery charge, that he was represented by counsel on that charge and that he had been named in a complaint in connection with a knifepoint assault which had allegedly occurred at the Freeport station approximately 10 days prior to the homicide.* While criminal reputation is relevant when supported by other information (see *United States v Harris,* 403 US 573, 582-583), a suspect's reputation may not be used "to give additional weight to allegations that would otherwise be insufficient" *(Spinelli v United States,* 393 US 410, 418-419). Accordingly, the prosecution at the suppression hearing did not make out a prima facie case with respect to the legality of the police conduct predicated upon probable cause. Given the Fourth Amendment violation, it must now be determined whether the statements made and the evidence seized after the arrest must be suppressed as the fruits of the illegal detention (see *Wong Sun v United States,* 371 US 471). Statements and physical evidence obtained by exploitation of detention or unlawful police conduct must be suppressed as violative of the Fourth Amendment, unless the causal connection between the illegal detention and the statements and evidence obtained is attenuated sufficiently to purge the primary taint of the illegal arrest *(Dunaway v New York,* 442 US 200, *supra; Brown v Illinois,* 422 US 590; *Wong Sun v United States, supra).* The test of attenuation was enunciated by the Supreme Court in *Brown v Illinois (supra,* pp 603-604), where it was held that the giving of *Miranda* warnings does not necessarily dissipate the taint of an illegal arrest and the following additional factors must be considered in making such a determination: "The temporal proximity of the arrest and the confession, the presence of intervening circumstances * * * and, particularly, the purpose and flagrancy of the official misconduct". Applying the *Brown* test to the facts and circumstances of the instant case, no claim of attenuation is credible. Approximately three hours elapsed between defendant's illegal detention and his first inculpatory statement, during which time no significant intervening event occurred. Defendant's second inculpatory statement, made some six hours after the first and following virtually continuous questioning, was " 'clearly the result and the fruit of the first' " *(Dunaway v New York, supra,* p 218, n 20; *Brown v Illinois, supra,* p 605, n 12). In turn, defendant's sketches of the murder weapon, his "consent" to the search of his grandmother's home, where he resided, to obtain the clothing he wore on the night of the crime, and the statements he made at his

---

* At the time defendant was picked up for questioning in connection with the instant homicide, he had not yet been charged with the complainant's assault; rather, it was the subject of a "continuing investigation."

grandmother's house, were clearly the product of his illegal questioning and resulting inculpatory statements. Indeed, defendant's interrogation took place in the absence of counsel notwithstanding the fact that the police were aware from the outset that defendant was represented by counsel on unrelated pending charges (see *People v Rogers*, 48 NY2d 167; *People v Servidio*, 77 AD2d 191). Weighing all these factors, we conclude that the statements made and sketches drawn by the defendant and certain items of clothing seized by the police were excludable as the product of his illegal arrest. Accordingly, the motion to suppress should have been granted by the trial court with one exception: defendant's coat should not be suppressed. Uncontroverted testimony at the suppression hearing established that defendant's friend, Jerry Knowell, took the coat in question from his own apartment and upon his own initiative voluntarily gave it to the police. As such, its taking was a private seizure which would not implicate Fourth Amendment considerations (see *People v Adler*, 50 NY2d 730, 737; *People v Gleeson*, 36 NY2d 462, 465; *People v Horman*, 22 NY2d 378, 381-382). Indeed, the relevant inquiry here is whether government officials violated any legitimate expectation of privacy held by defendant; the notion that "arcane" concepts of ownership and property ought to control the ability to claim Fourth Amendment protections has been emphatically rejected *(Rakas v Illinois*, 439 US 128, 149-150, n 17; see, also, *United States v Salvucci*, 448 US 83, 91-93; *Rawlings v Kentucky*, 448 US 98, 105-106). Under the instant circumstances, we find that defendant had no legitimate expectation of privacy in the coat after he gave it to Knowell, and thus its seizure did not violate his Fourth Amendment rights. We further note that, despite the People's and the trial court's contrary conclusions, defendant's representation by counsel on unrelated criminal charges also pending in Nassau County, and of which law enforcement authorities were aware prior to the commencement of questioning, was an absolute prohibition to any police interrogation of defendant on the instant criminal charges in the absence of his attorney *(People v Rogers*, 48 NY2d 167, *supra; People v Servidio*, 77 AD2d 191, *supra; People v Miller*, 76 AD2d 576). Accordingly, defendant's statements to the police must also be suppressed on the basis of the rule expressed in *Rogers*. Additionally, we observe that there is no question of the applicability of *Rogers* to this defendant, as it was held to be retroactive in *People v Bell* (50 NY2d 869). We have considered defendant's other contentions and we find them to be without merit. Gibbons, J.P., Rabin, Gulotta and Margett, JJ., concur.