OPINION OF THE COURT
Arthur W. Lonschein, J.
This case presents certain aspects of the law of search and seizure, not previously encountered in New York, with regard to “controlled deliveries” of previously seized contraband matter. The defendants were indicted for the crime of possession of marihuana in the first degree. They now move to suppress the physical evidence of that marihuana.
The essential facts are not in dispute and can be summarized briefly as follows: On February 22, 1981, certain crates arrived at Kennedy Airport, aboard a Lufthansa Airlines cargo flight from Nigeria. The defendant Bannister was listed on the manifest as consignee. United *771 States customs officials viewed the shipment as suspicious, since Nigeria is known by them to be a frequent source of marihuana smuggled into this country.
The customs agents then utilized the services of a dog which had been trained to detect the odor of marihuana. This dog was allowed to sniff the outside of the crates and immediately indicated the presence of marihuana in each of them. The agents opened the crates, confirmed the presence of marihuana inside, and then resealed them. They then contacted the Federal Drug Enforcement Agency (DEA). They regarded the crates as seized, and would not have released them to the consignees except in the context of a “controlled delivery”, which is what followed.
The DEA, acting jointly with the customs agents, removed the crates to an area over which they maintained control, and kept them under constant surveillance.
On February 23, 1981, the defendants appeared at the terminal, signed for the crates, which were released to them by customs, and loaded them onto a rented van. During this time, the crates and the defendants were under close DEA scrutiny, and the DEA had the entire area surrounded and under their control. Before the defendants could leave, the agents revealed themselves, arrested the defendants, and seized the crates. The DEA then turned the defendants and the evidence over to the New York City police for prosecution.
None of the customs service or DEA activity described here was carried out under the authority of a warrant.
The defendants, quite properly, do not challenge any of the actions of the customs agents, from the initial search and seizure of the crates until they were taken to the storage area. As the Court of Appeals has recently held, the sniffing of the outside of the crates by the police detector dog did not constitute a search. (People v Price, 54 NY2d 557.) The subsequent opening of the crates and inspection of the contents was a bona fide border search and that fact, in and of itself, rendered the search reasonable and valid under the Fourth Amendment without requiring a warrant. “This longstanding recognition that *772 searches at our borders without probable cause and without a warrant are nonetheless ‘reasonable’ has a history as old as the Fourth Amendment itself. We reaffirm it now.” (United States v Ramsey, 431 US 606, 619.) The authority of the customs agents in this regard is circumscribed only by the applicable statute, section 482 of title 19 of the United States Code, which requires “reasonable cause to suspect” that the articles inspected may contain merchandise imported contrary to law. This standard is far less stringent than “probable cause”. (See People v Regnet, 111 Misc 2d 105; United States v Doe, 472 F2d 982, cert den sub nom. Rodriguez v United States, 411 US 969.)
In order to justify suppression, defendants ask the court to view the seizure of the crates from the van as being a totally separate and independent police action, deriving no justification whatever from the earlier customs seizure. If the court were to accept this argument, the evidence might well have to be suppressed, as the search was not merely incidental to a lawful arrest, was not prompted by any exigency, and was not justified by what remains of the “automobile exception”. (Robbins v California, 453 US 420; New York v Belton, 453 US 454, on remand 55 NY2d 49; .United States v Chadwick, 433 US 1; Arkansas v Sanders, 442 US 753.)
The leading New York case in this area is People v Adler (50 NY2d 730, cert den 449 US 1014). Adler involved a search originally made by private parties not subject to the requirements of the Fourth Amendment. Employees of an airline in Los Angeles had accepted a package for shipment to New York. Suspecting that it contained hazardous material, they opened it and found a large quantity of pills. They notified the Los Angeles police, who seized the package and determined that the pills were contraband material. They then returned the package to the airline for shipment to the New York police. In New York, the police took custody of the package and confirmed the contraband nature of its contents. They allowed the defendant to take possession of the package, at which time she was arrested.
The Court of Appeals held that the warrantless police action in New York was not a separate and independent search, but merely a continuance of the Los Angeles *773 search. The court analyzed the Los Angeles search, and found that it did not violate the Fourth Amendment since the pills had, in effect, been opened to plain view by the action of private persons. The court concluded (People v Adler, 50 NY2d 730, 738-739):
“[W]hen the New York police searched the package, there was no independent intrusion requiring a warrant, but simply a continuation of the valid search and seizure effected in Los Angeles * * *
“The property here * * * once lawfully seized and under continuous police control, simply was permitted to come into the suspect’s hands as bait in a trap set not by the police but apparently by the suspect herself.”
The Court of Appeals was unanimous in its opinion that the Los Angeles and New York searches constituted but a single episode of police activity which had to be justified at its inception in Los Angeles, or not at all.[1]
This doctrine of “continuous seizure” was first enunciated in United States v De Berry (487 F2d 448) which also involved a search initiated by private persons. It has been adopted by numerous Federal and State courts in similar cases (United States v Bulgier, 618 F2d 472, cert den 449 US 843; United States v Ford, 525 F2d 1308; United States v Andrews, 618 F2d 646, cert den 449 US 824; United States v Issod, 508 F2d 990, cert den 421 US 916; State v Johnson, 569 SW2d 808 [Tenn]; McConnell v State, 595 P2d 147 [Alaska], cert den sub nom. McConnell v Alaska, 444 US 918; State v Pohle, 166 NJ Super 504, cert den 81 NJ 328).
Defendants attempt to distinguish Adler (supra) on the grounds that the search in this case was wholly governmental in nature from its inception, whereas the original search in Adler was made by private persons. There are no New York cases which rule on the applicability of the De Berry-Adler continuous-seizure doctrine to searches initiated by government action. The reasoning in Adler, however, gives no indication that the private nature of the original search was in any way related to the question of *774 continuous seizure. It was the ultimate legality of the initial police action, and not the reason for its validity, which was . essential to the Court of Appeals holding.
The court views the continuous-seizure doctrine as fully applicable to this case. Here, as in Adler (supra) and De Berry (supra), there was a proper, warrantless, initial search and seizure, followed by a period of continuous police control over the package, until the police allowed its delivery into the hands of one who claimed possession, at which time the claimant was arrested. In both cases, the circumstances of the delivery to the claimants were such that at all times the package remained within the effective control of the police, notwithstanding the fact that the claimants may have thought that they enjoyed exclusive possession for a time.
Thus, the intrusion into the van, the removal of the containers and their subsequent search is properly viewed not as an independent action requiring a warrant, but as merely a continuation of the valid warrantless search and seizure effected by the customs agents.
The court finds no merit in defendant’s argument that the customs search and seizure, as a governmental act, in some vague sense “triggered” or “implicated” the Fourth Amendment even though it did not require a warrant, and that the Fourth Amendment then demanded a warrant when the crates were transferred to the drug agents or reopened by them. The drug agents entered this affair acting jointly with the customs agents, and could lawfully continue the investigation they had begun.[2] (See United States v Bates, 526 F2d 966.) As the Second Circuit observed in De Berry (supra, p 451, n 4): “Such cooperation and teamwork are a laudable and necessary adjunct to the nationwide attack against drugs, and it does not serve the purpose of the fourth amendment in any way to create unnecessary stumbling blocks to such cooperation.”
The court’s research has revealed only two reported cases which involved the applicability of the continuous- *775 search doctrine to wholly governmental searches.[3] In People v Hampton (115 Cal App 3d 515) a plant quarantine inspector in Hawaii, lawfully proceeding without a warrant, had found marihuana in a package destined for San Francisco. The Hawaii police took control of the package and arranged with the San Francisco police for a controlled delivery. The California Court of Appeal had no problem in applying the continuous-service rule, citing De Berry (supra).
In United States v Richards (638 F2d 765) a customs inspector in New York opened incoming international mail and found contraband. There was then, under Drug Enforcement Agency surveillance, a controlled transit and delivery at the destination in Florida. The court did not discuss the “continuous seizure” doctrine, choosing to analyze the facts as an “extended border search”. The necessary elements of such an “extended border search”, as. set forth by the Court of Appeals, make clear the close relationship this theory has to that set forth in De Berry (supra) and Adler (supra): (a) there must be a border crossing; (b) it must appear (as by continuous surveillance) that the thing to be searched has not been altered; and (c) if the thing to be searched has been delivered, that there is reasonable cause to suspect that it contains merchandise. The concurring opinion in Richards referred to the continuous-seizure theory as an equally valid analysis of the facts, further indicating the similarity of the two theories.
In sum, the court feels constrained to treat the entire series of events in this case as one continuous seizure, valid at its inception due to the authority of the customs agents, and valid throughout. The motion to suppress will accordingly be denied.
Finally, the court wishes to address an argument made by one of defense counsel at the hearings, when he pointed out that the defendants are charged with possessing the marihuana. If the police are regarded as being in continuous control of the crates, counsel argued, the defendants *776 obviously could not have possessed them. He suggested that if the court adopted that theory, it should simultaneously dismiss the indictment.
Counsel said this with tongue in cheek, but the court views the argument as not wholly frivolous. It was advanced, quite seriously, by the dissent in United States v Andrews (618 F2d 646, 654, supra). The majority, obviously, did not accept it, and chose not to comment on it. Similarly, there was a concurring opinion in United States v Batimana (623 F2d 1366, 1371, n 2) which viewed the possibility of dual possession as “[paradoxical”.
The court can see no contradiction here. Defendants were in the same position as anyone who takes the bait in a well-designed trap — they may well have had possession of it, but they could not get away with it. People v Adler (50 NY2d 730, supra) and United States v De Berry (487 F2d 448, supra) both involved possessory offenses, as did the majority of cases cited herein, and in no case of which the court is aware was the defendants’ argument as to dismissal even discussed by the majority. This court rejects it now.
The motion is denied in all respects.
(Upon reargument, March 11, 1982)
The court, in an earlier memorandum, denied the defendants’ motion for suppression of two crates containing marihuana.
The defendants now move for reargument on the ground that the court’s opinion contains a misapprehension of fact. Specifically, the court stated in its opinion that the customs agents opened both crates and found marihuana inside both crates, before transferring custody of the crates to the DEA. In fact, only one of the crates was opened by the customs agents. The other crate was opened and searched by agents of the DEA, after it had been first loaded into the defendants’ van and then removed therefrom following the defendants’ arrest. The defendants, for the purposes of this motion, request the court to reconsider its decision only as to the crate which was not opened by the customs agents. Their reasoning is that the actions of the customs agents had not placed the contents of this crate *777 into the equivalent of plain view and that therefore the court’s reasoning, based on the rationale of United States v DeBerry (487 F2d 448, supra) and People v Adler (50 NY2d 730, cert den 449 US 1014, supra) does not apply to the search of that crate.
The court grants the motion for reargument, in order to consider whether a different result is required as to the second, unopened crate. If the seizure of the unopened crate is considered without regard to the circumstances surrounding the first crate, suppression might well be required. When it came into DEA hands, the crate had not been opened by persons who had a right to do so without a warrant. Its contents, therefore, had in fact not been revealed to the DEA agents. Recent decisions of the United States Supreme Court, upon which the defendant relies, would seem to prohibit the opening of this crate without a warrant. (United States v Chadwick, 433 US 1, supra; Arkansas v Sanders, 442 US 753, supra; Robbins v California, 453 US 420, supra [it may be, however, that the Supreme Court may reconsider the holding in Robbins; see People v Belton, 55 NY2d 49, supra].)
The crates cannot, however, be separated in this way. They were closely associated with each other in that they entered the country together, sent by the same shipper and intended for the same consignee. They were identical in outward appearance. It would be artificial to separate these two halves of a single shipment, and to consider one as if the other had never existed.
Both crates were seized by the customs agents upon entry into the country. When one was opened and found to contain marihuana, the likelihood became extremely strong that the second crate also contained marihuana. There was no obligation on the government to open this second crate immediately. The government agents were entitled to defer opening the second crate until after someone had appeared to claim the shipment. It makes no difference that the opening of the second crate was done by DEA agents. As the court noted in its original opinion, the operation was a joint one between the customs service and the DEA.
*778 It cannot be doubted that either the customs agents or the DEA agents would have been within their rights to open the second crate at any time before the defendants appeared. This crate had, after all, been lawfully seized by the customs agents with whom the DEA agents were working and had not been removed from government custody. The court cannot accept the argument that merely because the agents allowed the defendants to load the crates into the van, that right terminated and a warrant became necessary. Neither crate ever left the area of government control. Nothing in the Supreme Court cases cited above can be construed as holding that closed containers, otherwise subject to search and seizure, gain greater protection from such search merely because they are placed in an automobile.
The defendants ask the court to analogize this situation to one in which police lawfully enter a room in which there is an open cigar box containing contraband. The police would not, say the defendants, have the right to conduct a warrantless search of any closed cigar boxes in the room, and should not have the right to search the second crate merely because the first one was found to contain marihuana. This analogy is inapt. Given the circumstances of this case, the unopened crate cannot be regarded as innocuous-seeming;
The court prefers to analogize this case to those cases in which multiple identical containers of drugs are smuggled into the country together. It is common practice in such cases to confiscate less than all of the containers, and to allow a controlled delivery of the remainder. The recipient is then arrested, and the remaining containers seized without a warrant and without illegality. (See United States v Ortega, 471 F2d 1350, supra.)
For the foregoing reasons, the motion to suppress is denied as to both crates;

. The lone dissent argued that the Los Angeles police acted improperly in failing to obtain a warrant.

. The court notes that, while the People concede that the controlled delivery was strictly directed by the DEA, customs agents continued to be involved up to and including the moment that the crates were released to the defendants. This fact is, however, not essential to the court’s determination.

. The court excludes United States v Ortega (471 F2d 1350, cert den 411 US 948) from this number, not for the reasons cited by the defense (with which the court disagrees in almost every particular) but because it was decided before De Berry (supra.) and because its facts were so unusual as to render it of limited precedential value.