OPINION OF THE COURT
Jasen, J.
The issue presented on this appeal is whether a private store detective is required to administer Miranda warnings to a shoplifting suspect where a special police officer, also a store employee, is present upon store premises, but does not participate in the apprehension or questioning of the suspect.
On July 16,1981, at approximately 5:55 p.m., defendant Essex Ray wa,s observed standing by a shelf display of Evan Picone shirts in the men’s furnishing department of Bloomingdale’s Department Store in Manhattan. His actions were witnessed by a plainclothes store detective, Vincent Galea, who was employed by Bloomingdale’s. Galea was suspicious of Essex Ray because he recognized defendant as having been previously apprehended in Bloomingdale’s and had seen defendant in the store earlier that day. After standing by the shirt display for one or two minutes, defendant looked to his left and to his right, and seized seven Evan Picone shirts from the shelves. Defendant then left *284 that section of the store with the designer shirts in one hand and a plastic shopping bag in the other hand. He walked directly to the service desk, where store employees handled customer refunds and merchandise returns, and got in line behind five or six people. Galea got in line behind defendant, and was asked by defendant whether he worked at Bloomingdale’s, to which Galea responded “no”. Defendant then put the seven designer shirts in his shopping bag. Galea thereupon displayed his store security badge, informed defendant that he was a store detective employed by Bloomingdale’s, and asked: “Do you want to come with me to the office, please?” Defendant accompanied Galea willingly-
When they reached a security office, which was a windowless room measuring five by seven feet, Galea lightly patted defendant down to see if he had weapons, and filled out four forms, to wit: two cards reflecting defendant’s general background, including name, age, birth date and address; a “criminal trespass sheet” which gave notice to defendant that if he returned to the store in the future, he could be arrested for criminal trespass; and, a “circumstances sheet” which set forth the reasons why defendant had been taken to the security room. Defendant was not free to leave during the period of questioning, and Galea did not administer Miranda warnings to defendant at any time. Defendant at no time complained about his health, asked to make a telephone call, or requested food. Galea wrote upon the “circumstances sheet”: “I concealed seven Evan Picone shirts totalling $175 in my shopping bag without paying for said merchandise”. After reading the circumstances aloud, and permitting defendant to review the written statement for one or two minutes, Galea told defendant to initial the statement to verify that what he wrote was true and to sign the bottom of the paper. Defendant initialed and signed the paper as requested, and Galea then signed his own name on the line designated “witness”.
Galea took the papers to his supervisor, the assistant security manager, Susan Rauch. Rauch informed Galea that defendant would be prosecuted, and Galea left. Rauch was the person who made the decision as to whether Bloomingdale’s would prosecute, and her approval was necessary whether the apprehension was made by a store detective, such as Galea, or a special police officer. Following the determination by Rauch that defendant would be prosecuted, Galea delivered his paper work to Special Police Officer Julia Bryant, an employee of Bloomingdale’s. Officer Bryant, who was licensed as a special officer by the *285 Police Commissioner of the City of New York, was the only special police officer on duty in Bloomingdale’s that evening. Officer Bryant administered to defendant his Miranda warnings and took defendant to central booking. The treatment of defendant was in accordance with store custom that the store detectives do not generally administer Miranda warnings and that if a decision were made by the store to prosecute, the store detectives would turn the case over to a special police officer for further proceedings.
On July 17, 1981, defendant was charged with petit larceny (Penal Law § 155.25) and criminal possession of stolen property in the third degree (Penal Law § 165.40). Prior to trial, defendant moved to suppress the inculpatory statement that he had signed in which he admitted to Galea that he had concealed in his shopping bag seven Evan Picone shirts valued at $175 without paying for them. Defense counsel argued, inter alia, that defendant’s statement should be suppressed because the involvement of the special police officer in the arrest mandated that defendant be advised of his Miranda rights. The People contended that as a private security guard acting solely on behalf of his private employer, store detective Galea was not required to administer Miranda warnings before questioning defendant.
On November 23,1981, following argument by counsel, Criminal Court of the City of New York, New York County, denied the motion to suppress defendant’s statement. The court found that no police officer or special police officer participated in the apprehension or questioning of defendant, nor did any such officer participate in making the decision to prosecute defendant. Concluding that the store detective had acted in a purely private capacity, and not as an agent for the State, the court held that Galea was not required to advise defendant of his Miranda rights, and that defendant’s inculpatory statement was voluntary. A jury trial was held on November 25, 1981 and defendant was found guilty on that date of both charges.
Appellate Term, First Department, in express reliance upon the factual findings at the Huntley hearing, reversed defendant’s conviction. Appellate Term held that the detention and interrogation of defendant by a private store detective employed by Bloomingdale’s and the subsequent formal arrest by a special police officer also employed by Bloomingdale’s “appears to represent a course of conduct calculated to circumvent defendant’s constitutional rights and as such cannot be countenanced.” The appeal is before us pursuant to CPL 450.90 (2) (a). For the *286 reasons that follow, the order of Appellate Term should be reversed.
The 5th Amendment privilege against compulsory self-incrimination, which the Miranda warnings are designed to protect, has never been held to apply where a private store detective questions a person without any participation by the government. The avowed purpose of Miranda was to secure the privilege against self-incrimination from encroachment by governmental action. (Miranda v Arizona, 384 US 436, 445.) In the absence of active governmental participation in a private investigation, no Miranda warnings need be administered. Private, conduct, however, may become so pervaded by governmental involvement that it loses its character as such and invokes the full panoply of constitutional protections. (People v Jones, 47 NY2d 528; People v Esposito, 37 NY2d 156, 160; People v Adler, 50 NY2d 730, 737; Corngold v United States, 367 F2d 1.) Relevant indicia of State involvement, which may transform private conduct into State action, include: a clear connection between the police and the private investigation (People v Horman, 22 NY2d 378, 380); completion of the private act at the instigation of the police (People v Esposito, supra); close supervision of the private conduct by the police (People v Esposito, supra); and a private act undertaken on behalf of the police to further a police objective (People v Adler, supra).
We do not agree with Appellate Term that Bloomingdale’s course of conduct in employing a special police officer on the premises to process any arrest ordered as a result of the private investigation conducted by employees of the store constituted governmental involvement requiring observance of the full panoply of constitutional protections.
In our view, there was insufficient state involvement in the private shoplifting investigation at issue to create a police-dominated custodial atmosphere and, thus, the store detective was under no duty to administer Miranda warnings to defendant. The mere presence of a special police officer upon the store premises does not establish state action. The private surveillance, apprehension and questioning of defendant was in no way instigated by the special police officer or undertaken upon the official behest of a law enforcement agency. The impetus for the shoplifting investigation was an internal store policy to prevent property loss. Defendant was neither identified as a suspect by the police nor questioned in the furtherance of a police-designated objective. The decision to prosecute defendant rested *287 solely in private hands, further evidencing that private objectives were primarily served by the investigation, as well as the lack of government supervision or control over the inquiry. (See, Note, Merchants’ Responses to Shoplifting: An Empirical Study, 28 Stan L Rev 589, 604-605.) In view of the absence of active governmental involvement in identifying, apprehending or questioning defendant, the investigation was private in character and not subject to Miranda safeguards. To hold that the conduct of the private store detective was governed by Miranda would be an extravagant expansion of the intended scope of that decision, and would constitute an unnecessary and unauthorized interference with the right of a merchant to protect his property by lawful means. (See, Watts v Indiana, 338 US 49, 61 [Jackson, J., concurring in part and dissenting in part].)
Critically important to our inquiry is a determination as to the moment of the entry of the police into the private shoplifting investigation. It is conceded that the special police officer, although an employee of Bloomingdale’s, was contacted by a private employee of the store only subsequent to the apprehension and questioning of defendant. It was not until after defendant had signed the inculpatory statement, and the decision to prosecute defendant had been made by the store’s assistant security manager, that the special police officer even became aware of the private investigation pending against defendant. For state action to exist, it must be demonstrated that official participation in the investigation at issue preceded, or occurred contemporaneously with, the signing cjr utterance of an inculpatory statement. For example, when police officers have actively participated in defendant’s apprehension, exerted official power to restrain defendant, escorted defendant to the site of interrogation, and awaited the outcome of the privately conducted interrogation in close proximity to the place of questioning, a custodial atmosphere of the nature Miranda was designed to alleviate has been created. (See, People v Jones, 47 NY2d 528, supra.) Under circumstances where police participation precedes or occurs contemporaneously with the private elicitation of inculpatory evidence, so as to create a coercive, custodial environment with the reasonable potential of infringing defendant’s privilege against compulsory incrimination, the Miranda safeguards must be observed. Inasmuch as police participation in the instant case did not occur until after the inculpatory statement was signed, there was no threat of official coercion or compulsion, and the private store detective was under no duty to administer Miranda warnings. Thus, any store policy reflecting *288 a practice of turning defendant over to authorities after investigation and the decision to prosecute have privately been made is constitutionally immaterial and, in reality, simply consistent with the customary procedures involved in all citizens’ arrests. (See, People v Adler, 50 NY2d 730, 737, supra.)
Accordingly, the order of Appellate Term should be reversed, and the case remitted to Appellate Term for consideration of the facts.
Chief Judge Wachtler and Judges Meyer, Simons, Kaye and Alexander concur.
Order reversed, etc.