People v Hernandez (2020 NY Slip Op 05321)





People v Hernandez


2020 NY Slip Op 05321


Decided on October 2, 2020


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on October 2, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CARNI, J.P., LINDLEY, NEMOYER, TROUTMAN, AND DEJOSEPH, JJ.


258 KA 17-02139

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
JOSE HERNANDEZ, DEFENDANT-APPELLANT. 






FRANK H. HISCOCK LEGAL AID SOCIETY, SYRACUSE (J. SCOTT PORTER OF COUNSEL), FOR DEFENDANT-APPELLANT.
WILLIAM J. FITZPATRICK, DISTRICT ATTORNEY, SYRACUSE (KENNETH H. TYLER, JR., OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Supreme Court, Onondaga County (John J. Brunetti, A.J.), rendered September 15, 2017. The judgment convicted defendant upon a nonjury verdict of criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously reversed on the law, that part of the omnibus motion seeking to suppress the statements made by defendant at the scene of his detention and the cocaine seized as a result of those statements is granted and a new trial is granted on counts one, two and five of the indictment.
Memorandum: Defendant appeals from a judgment convicting him following a nonjury trial of criminal sale of a controlled substance in the third degree (Penal Law § 220.39 [1]) and criminal possession of a controlled substance in the third degree (§ 220.16 [1]) related to his possession and sale of cocaine at a parking lot on South Geddes Street in the City of Syracuse. Contrary to defendant's contention, the People's pronouncement of readiness was not illusory even though the announcement was made before the People had received a formal laboratory analysis confirming that the substance at issue was cocaine (see People v Van Hoesen, 12 AD3d 5, 7-9 [3d Dept 2004], lv denied 4 NY3d 804 [2005]; cf. People v Swamp, 84 NY2d 725, 732 [1995]). Indeed, as we have held, such a report is not necessary to sustain a conviction for selling drugs (see People v Cruz, 298 AD2d 905, 905 [4th Dept 2002], lv denied 99 NY2d 557 [2002]; People v Lynch, 85 AD2d 126, 128-130 [4th Dept 1982]). Upon viewing the evidence in light of the elements of the crimes in this nonjury trial (see People v Danielson, 9 NY3d 342, 349 [2007]), we further conclude that the verdict is not against the weight of the evidence (see generally People v Bleakley, 69 NY2d 490, 495 [1987]).
We agree with defendant, however, that County Court (Bauer, A.J.) erred in refusing to suppress all of defendant's statements to the police and the evidence that was "obtained through knowledge gained by reason of said statements." Although the court suppressed the statements defendant made to police officers at the police station, the court refused to suppress the statements defendant made at the scene of his initial detention and the physical evidence that was retrieved from his person.
Defendant contends initially that police officers lacked sufficient cause to effectuate the vehicle stop and to seize defendant. We agree with the People that defendant did not preserve for our review his challenge to the initial stop of the vehicle inasmuch as he did not raise that challenge in his motion papers or before the suppression court (see People v Facen, 117 AD3d 1463, 1464 [4th Dept 2014], lv denied 23 NY3d 1020 [2014]). Contrary to defendant's contention, the court, in expressing an advisory opinion on what it would have concluded had such a challenge been made, did not "expressly decide[]" the issue in response to a protest by defendant (CPL 470.05 [2]; see People v Turriago, 90 NY2d 77, 84 [1997], rearg denied 90 [*2]NY2d 936 [1997]; cf. People v Gambale, 150 AD3d 1667, 1668 [4th Dept 2017]; see generally People v Smith, 22 NY3d 462, 465 [2013]). We decline to exercise our power to review that contention as a matter of discretion in the interest of justice (see CPL 470.15 [6] [a]).
Defendant further contends that he was subjected to a de facto arrest without probable cause and, in the alternative, that he was detained without reasonable suspicion. We agree with defendant that he preserved the former contention for our review inasmuch as he contended, in his motion papers, that he was "detained without probable cause to arrest." Although the latter contention was not specifically raised in the motion papers, we nevertheless exercise our power to address it as a matter of discretion in the interest of justice (see id.).
As defendant contends, the police officers lacked reasonable suspicion to detain him. It is undisputed that a police officer conducting surveillance of a shopping plaza parking lot known for narcotics transactions observed defendant approach a vehicle that was parked in a remote location of that parking lot in the middle of the afternoon. Defendant had his back toward the officer, who testified at the suppression hearing that he could not see "what, if anything, was passed back and forth." Although the officer surmised that a drug transaction occurred, a "mere 'hunch' or 'gut reaction' " is insufficient to create the requisite reasonable suspicion that criminal activity was afoot (People v Sobotker, 43 NY2d 559, 564 [1978]; see People v Stock, 57 AD3d 1424, 1425 [4th Dept 2008]). Nevertheless, that officer directed two teams of officers to stop the purported buyer's vehicle as well as the vehicle in which defendant left the scene of the purported transaction as a passenger. One team of officers approached the vehicle in which defendant was a passenger while it was located at a fast-food restaurant one-half mile away from the scene of the purported transaction. After defendant exited the vehicle, he was immediately handcuffed and escorted by those officers to a different area of the restaurant parking lot, where he was questioned "for a while."It is undisputed that defendant was not free to leave at that point in time. Defendant thereafter admitted that he was in possession of cocaine, at which time he was placed under arrest.
A second team of officers stopped and questioned the purported buyer. She admitted purchasing $50 of cocaine and, after officers drove her to defendant's location, she identified him as the person who sold her the cocaine. Defendant was thereafter taken to the police station, where officers recovered cocaine and $50 from his person.
It is well settled that reasonable suspicion "may not rest on equivocal or 'innocuous behavior' that is susceptible of an innocent as well as a culpable interpretation" (People v Brannon, 16 NY3d 596, 602 [2011]; see People v Riddick, 70 AD3d 1421, 1422 [4th Dept 2010], lv denied 14 NY3d 844 [2010]) and, here, it is undisputed that there was no actual observation of any hand-to-hand exchange (cf. People v Lee, 110 AD3d 1482, 1483 [4th Dept 2013]). The People ask that we infer that there was some communication between the officers who stopped the buyer and the officers who stopped defendant that would provide the officers detaining defendant with reasonable suspicion to support the detention (see People v Ramirez-Portoreal, 88 NY2d 99, 114 [1996]). We decline to do so inasmuch as the stops of the buyer and defendant occurred simultaneously and defendant was forcibly detained almost immediately upon his exit from the vehicle. There is no basis to draw any inference that there was additional communication between the two teams of officers before defendant's detention (cf. id.).
Inasmuch as the officer conducting the surveillance and directing the stop of defendant "did not see what the defendant and [the alleged buyer] exchanged, could not see if one of the [participants] gave the other something in return for something else, and did not see money pass between the two [individuals]," we conclude that the officers detaining defendant lacked reasonable suspicion to do so (People v Loper, 115 AD3d 875, 879 [2d Dept 2014]; see People v Forrest, 77 AD3d 511, 512 [1st Dept 2010]; People v Peterson, 266 AD2d 738, 739 [3d Dept 1999]).
Based on the foregoing, we further conclude that defendant's detention constituted a de facto arrest (see generally People v Yukl, 25 NY2d 585, 589 [1969], cert denied 400 US 851 [1970]). Although the use of handcuffs does not automatically transform a defendant's detention into a de facto arrest (see People v Pruitt, 158 AD3d 1138, 1139 [4th Dept 2018], lv denied 31 NY3d 1120 [2018]), such use must be justified by some additional circumstances, such as a threat of evasive conduct (see People v McDonald, 173 AD3d 1633, 1634 [4th Dept 2019], lv [*3]denied 34 NY3d 934 [2019]); a need to transport the defendant for a showup procedure (see People v Owens, 39 AD3d 1260, 1261 [4th Dept 2007], lv denied 9 NY3d 849 [2007]); a fear that the suspect may interfere with the execution of a search warrant (see People v Binion, 100 AD3d 1514, 1516 [4th Dept 2012], lv denied 21 NY3d 911 [2013]); or a concern for officer safety (see People v Allen, 73 NY2d 378, 379-380 [1989]).
Here, there was no testimony to establish any of those circumstances. Specifically, there was no testimony that the officer who handcuffed defendant "reasonably suspect[ed] that he [was] in danger of physical injury by virtue of [defendant] being armed" (People v De Bour, 40 NY2d 210, 223 [1976]). "[T]he test for determining whether a defendant is in custody or has been subjected to a de facto arrest is 'what a reasonable [person], innocent of any crime, would have thought had he [or she] been in the defendant's position' " (People v Brewer, 118 AD3d 1407, 1408 [4th Dept 2014], lv denied 24 NY3d 1082 [2014], quoting Yukl, 25 NY2d at 589; see People v Hicks, 68 NY2d 234, 240 [1986]). In our view, a reasonable person innocent of any crime would have believed that he or she was under arrest under the circumstances of this case (see Lee, 110 AD3d at 1484; see also People v Finch, 137 AD3d 1653, 1654 [4th Dept 2016]).
We further conclude that the de facto arrest was not supported by probable cause inasmuch as the officer directing the team to stop defendant did not observe any of the telltale signs of a narcotics transaction, such as a hand-to-hand exchange, an exchange of currency or glassine bags, or evasive or furtive behavior. Despite the officer's experience in drug investigations, the evidence is simply insufficient to establish probable cause to believe that a crime occurred (see Lee, 110 AD3d at 1484; see also People v Ayarde, 161 AD3d 630, 631 [1st Dept 2018]).
Based on our determination, we conclude that defendant's statements at the scene must be suppressed. Inasmuch as defendant admitted to the possession of the cocaine on his person in those statements, the cocaine seized from his person must also be suppressed (see Lee, 110 AD3d at 1484). We do not reach the same conclusion with respect to the money that was taken from defendant. In his omnibus motion, defendant sought suppression of only that physical evidence that was "obtained through knowledge gained by reason of [the] statements." There is no evidence that the money was obtained as a direct result of defendant's statements, and we do not address any other basis for suppression of that evidence.
Inasmuch as the counts of which defendant was convicted relate to the sale of cocaine to the alleged buyer and defendant's possession of cocaine with intent to sell at the location of the shopping plaza, i.e., possession of the cocaine that was ultimately sold, our determination does not "result[] in the suppression of all evidence in support of the crimes" of conviction and thus does not require dismissal of the indictment (People v Cady, 103 AD3d 1155, 1157 [4th Dept 2013]).
We therefore reverse the judgment, grant that part of the omnibus motion seeking to suppress the statements made by defendant at the scene of his detention as well as the cocaine seized as a result of those statements and grant a new trial on counts one, two and five of the indictment.
Entered: October 2, 2020
Mark W. Bennett
Clerk of the Court