People v Hernandez (2025 NY Slip Op 04315)

People v Hernandez

2025 NY Slip Op 04315

Decided on July 25, 2025

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 25, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: LINDLEY, J.P., CURRAN, OGDEN, DELCONTE, AND KEANE, JJ.

379 KA 22-00181

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
JESUS HERNANDEZ, DEFENDANT-APPELLANT. 

JULIE CIANCA, PUBLIC DEFENDER, ROCHESTER (SABRINA A. BREMER OF COUNSEL), FOR DEFENDANT-APPELLANT.
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (AERON SCHWALLIE OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Monroe County Court (Michael L. Dollinger, J.), rendered December 1, 2021. The judgment convicted defendant upon a jury verdict of criminal possession of a weapon in the second degree. 
It is hereby ORDERED that the judgment so appealed from is reversed on the law, that part of the omnibus motion seeking to suppress defendant's statements is granted, and a new trial is granted on count 1 of the indictment.
Memorandum: On appeal from a judgment convicting him upon a jury verdict of criminal possession of a weapon in the second degree (Penal Law § 265.03 [3]), defendant contends that he was unlawfully detained by the police following a traffic stop of the vehicle in which he was a passenger and that County Court erred in refusing to suppress his statements to the police as the fruit of that unlawful detention. We agree.
Two New York State Troopers assigned to the Gun-Involved Violence Elimination detail in the City of Rochester pulled over a vehicle in which defendant was a passenger because the driver failed to stop at a stop sign and defendant was not wearing a seatbelt. The Troopers subsequently determined that the vehicle would have to be impounded because neither the driver nor defendant had a valid driver's license. The Troopers then directed the driver and defendant to exit the vehicle so the Troopers could conduct an inventory search. Pursuant to standard procedure, the driver and defendant were placed in handcuffs. No other basis for placing the driver and defendant in handcuffs was offered by the People, and at the suppression hearing one of the Troopers testified that, in the City of Rochester, "for our safety reasons, every single time we have somebody exit the vehicle, we put them in handcuffs." Before the inventory search was conducted, the vehicle's driver began acting nervous, and when one of the Troopers inquired about her behavior, the driver stated that there was a gun in a bag in the vehicle. The Troopers retrieved and searched the bag, which contained a loaded handgun. Defendant and the driver were then arrested and taken to the State Police station for processing, where defendant began talking to one of the Troopers and made spontaneous statements indicating that the gun belonged to him. Defendant was later read the Miranda warnings; he waived his Miranda rights and signed a written statement admitting that the gun belonged to him. Prior to trial, defendant sought suppression of his oral and written statements on the ground that, inter alia, the Troopers subjected him to an unreasonable seizure in violation of his Fourth Amendment rights when they placed him in handcuffs as he exited the vehicle. The court refused to suppress the statements.
We agree with defendant that by placing him in handcuffs after directing him to exit the vehicle, the Troopers transformed the traffic stop into a "forcible stop and detention" (People v De Bour, 40 NY2d 210, 223 [1976]), which "must be justified by some additional circumstances, such as a threat of evasive conduct . . . ; a need to transport the defendant for a showup procedure . . . ; a fear that the suspect may interfere with the execution of a search warrant . . . ; or a concern [*2]for officer safety" (People v Hernandez, 187 AD3d 1502, 1505 [4th Dept 2020]; see People v Harrison, 57 NY2d 470, 476 [1982]). The People did not present evidence at the suppression hearing of
" 'articulable facts' from the encounter to establish reasonable suspicion that defendant posed any danger to the officers" (People v Porter, 136 AD3d 1344, 1345 [4th Dept 2016]), and the mere fact that defendant was located in the City of Rochester, an alleged high crime area, which was the sole justification offered by the People for his forcible stop and detention, "does not supply that requisite reasonable suspicion" (People v Riddick, 70 AD3d 1421, 1423 [4th Dept 2010], lv denied 14 NY3d 844 [2010]). Thus, we further agree with defendant that he was unlawfully detained in violation of his Fourth Amendment rights prior to making the statements he seeks to suppress.
Statements made by a defendant following an unlawful detention in violation of the Fourth Amendment must be suppressed unless the People establish that the statements were voluntary or otherwise admissible under Miranda v Arizona (384 US 436 [1966]) and that the statements were not "obtained by exploitation of the illegality" of defendant's detention (Dunaway v New York, 442 US 200, 217 [1979] [internal quotation marks omitted]; see Brown v Illinois, 422 US 590, 600-604 [1975]), i.e., that they were "sufficiently attenuated" to dissipate the taint of the unlawful conduct (Dunaway, 442 US at 216; see Brown, 422 US at 600-604). To be sufficiently attenuated, the statements must have been " 'acquired by means sufficiently distinguishable from the [detention] to be purged of the illegality,' " and a court must consider " 'the temporal proximity of the arrest and the [statements], the presence of intervening circumstances and, particularly, the purpose and flagrancy of the official misconduct' " in making that determination (People v Bradford, 15 NY3d 329, 333 [2010]; see People v Butler, 80 AD2d 644, 645 [2d Dept 1981]).
Here, the People failed to argue during the suppression hearing that defendant's statements were sufficiently attenuated from the unlawful detention to be admissible at trial (see People v Clark, 149 AD2d 720, 721 [2d Dept 1989]). In response to defendant's contention on appeal, the People do not dispute that they failed to argue attenuation at the suppression hearing, and they assert instead that the issue was nonetheless preserved inasmuch as the court, in its decision and order, implicitly determined the issue in concluding that the statements were admissible. Contrary to the People's assertion, we conclude that the court's decision and order addressed only the voluntariness of defendant's statements under Miranda and did not "expressly decide[ ]" that the statements were sufficiently attenuated from the unlawful detention (CPL 470.05 [2]; see People v Benbow, 193 AD3d 869, 872-873 [2d Dept 2021]). Inasmuch as " 'an appellate court may not uphold a police action on a theory not argued before the suppression court' " (People v Rollins, 125 AD3d 1540, 1541 [4th Dept 2015]), we agree with defendant that the court erred in denying that part of his omnibus motion seeking to suppress his statements.
We further conclude that the error is not harmless inasmuch as there is a "reasonable possibility that the error might have contributed to defendant's conviction" (People v Crimmins, 36 NY2d 230, 237 [1975]; see Porter, 136 AD3d at 1345). Defendant's statements were the only evidence introduced at trial that directly tied him to the gun found in the vehicle (see Porter, 136 AD3d at 1345-1346). We therefore reverse the judgment, grant that part of defendant's omnibus motion seeking to suppress his statements, and grant a new trial on count 1 of the indictment.
In view of our determination, we do not address defendant's remaining contentions.
All concur except Lindley, J.P., and Keane, J., who dissent and vote to hold the case, reserve decision, and remit the matter to Monroe County Court for further proceedings in accordance with the following memorandum: We respectfully dissent. The majority suppresses undisputedly spontaneous statements made by defendant at the police station following his arrest for possession of a loaded firearm that was found, following a lawful traffic stop, in a vehicle operated by his girlfriend. In his spontaneous statements, defendant said that "the bullets were hollow points" and "I know that gun inside and out, now you know its mine." The majority also suppresses a written statement that defendant made after waiving his Miranda rights.
As the majority concludes, two New York State Troopers unlawfully detained defendant in handcuffs following the traffic stop. At the time, the Troopers had no reason to believe that [*3]either defendant or the driver had committed a crime. But the unlawful detention lasted less than a minute before the driver informed the Troopers that there was a gun in the vehicle, thus providing the Troopers with probable cause to arrest both the driver and defendant for criminal possession of a weapon. Thus, at the time he made his statements, defendant was lawfully under arrest.
In seeking suppression, defendant, relying on Wong Sun v United States (371 US 471 [1963]) and Dunaway v New York (442 US 200 [1979]), contended that his statements should be suppressed as fruit of the poisonous tree, the tree being the unlawful detention. Defendant repeated that argument at the conclusion of the suppression hearing. In determining whether evidence constitutes fruit of the poisonous tree, courts must determine "whether, granting establishment of the primary illegality [here, the unlawful detention], the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint" (Wong Sun, 371 US at 488 [internal quotation marks omitted]; see Dunaway, 442 US at 217-218).
In refusing to suppress the statements, however, County Court did not specifically address whether defendant was unlawfully detained and, if so, whether his otherwise voluntary statements constituted fruit of the poisonous tree. Because the court did not base its suppression determination on the ground that defendant's statements were not fruit of the poisonous tree, as defendant contended, we cannot affirm on that ground (see People v Concepcion, 17 NY3d 192, 195 [2011]; People v LaFontaine, 92 NY2d 470, 473-474 [1998], rearg denied 93 NY2d 849 [1999]; see generally CPL 470.15 [1]). The court's failure to rule on defendant's contentions "cannot be deemed a denial thereof" (People v Fulcott, 236 AD3d 1350, 1350 [4th Dept 2025]; see generally People v Baker, 229 AD3d 1324, 1328 [4th Dept 2024]). We would thus hold the case, reserve decision, and remit the matter to County Court for a ruling on defendant's fruit of the poisonous tree contention as it relates to the oral and written statements he made at the police station following discovery of the loaded firearm, which provided the Troopers with independent grounds to arrest defendant.
Although the majority is correct that the People did not argue below that defendant's statements were attenuated from the unlawful detention, attenuation is an exception to the application of the exclusionary rule with respect to "fruits of the poisonous tree" (People v Turriago, 90 NY2d 77, 85 [1997], rearg denied 90 NY2d 936 [1997] [internal quotation marks omitted]; see People v Crispell, 223 AD3d 941, 945 [3d Dept 2024], lv denied 41 NY3d 964 [2024]; People v Contreras, 194 AD3d 835, 837 [2d Dept 2021], lv denied 37 NY3d 991 [2021]). There is no need to determine whether the attenuation exception applies unless and until it is determined that there is evidence to suppress in the first instance. The fact that the People did not argue attenuation below does not mean that we or the motion court must accept defendant's contention that his voluntary statements should be suppressed due to the unlawful detention.
We have reviewed defendant's remaining contentions and conclude that none warrant modification or reversal of the judgment.
Entered: July 25, 2025
Ann Dillon Flynn
Clerk of the Court