OPINION OF THE COURT
Donald J. Mark, J.
This is an application by the defendant, who is charged with three counts of criminal possession of a weapon, third degree, pursuant to CPL 710.20 (1), to suppress the handgun seized from him upon the ground that the seizure resulted from an illegal arrest.
On December 31, 1991, at approximately 10:00 p.m., Officer Holmes was dispatched to a location where the defendant had fallen and sustained injuries. The officer smelled alcohol on the defendant’s breath. An ambulance transported the defendant to the hospital, and the officer followed in his vehicle. At the hospital the defendant resisted treatment by struggling, so Dr. Elio informed the defendant that he was arresting him under the Mental Hygiene Law. The defendant was then restrained by the doctor, hospital security personnel and the officer. The officer assisted the security personnel to help effect the doctor’s “arrest,” although he was not requested to do so by the doctor. The officer only held the defendant’s legs as he was struggling. After the defendant was successfully restrained, a nurse removed his coat so that she could take his blood pressure. At the time she discovered a handgun which *764 she turned over to the officer. A second officer then arrested the defendant.
The defendant claims that the police officer’s participation in subduing the defendant constituted an arrest by the officer under the Mental Hygiene Law, that there was insufficient probable cause to justify this arrest and that the seizure of the handgun by the nurse was the result of the illegal arrest. The People respond that the attending physician, not the officer, arrested the defendant, and that the officer was not responsible for the search wherein the nurse located the handgun.
Many complex legal issues arise from this simple fact pattern.
Although the defendant was informed by Dr. Elio that the doctor was arresting the defendant under the authority of the Mental Hygiene Law, and the defendant was thereafter restrained by the doctor, hospital security personnel and the police officer, this conduct did not constitute an arrest. "[W]hen the intrusion involved is of sufficient magnitude, an 'arrest’ will be said to occur * * * However, it is equally as clear that not every seizure constitutes an arrest. (See Terry v Ohio, 392 US 1.)” (People v Chestnut, 51 NY2d 14, 20, cert denied 449 US 1018.) "An arrest is determined under an objective test of what a reasonable man, innocent of a crime, would have thought had he been in defendant’s position (People v Yukl, 25 NY2d 585, 589, cert denied 440 US 851)” (People v Jones, 172 AD2d 265, 266).[1]
This court is not bound by Officer Holmes’ and Dr. Elio’s characterization of the doctor’s conduct as an arrest (People v Chestnut, supra).[2] The temporary restraint of the recalcitrant defendant for the purpose of administering medical treatment was not an intrusion of his liberty of "sufficient magnitude.” The defendant, had he been innocent of a crime (and had he not been under the apparent influence of alcohol), would have recognized the actions of the parties involved as exactly what they were intended to be, and not an arrest.
Further support for this conclusion can be found in section 35.10 of the Penal Law which provides in relevant part as follows:
*765 "The use of physical force upon another person which would otherwise constitute an offense is justifiable and not criminal under any of the following circumstances * * *
"5. A duly licensed physician, or a person acting under his direction, may use physical force for the purpose of administering a recognized form of treatment which he reasonably believes to be adapted to promoting the physical or mental health of the patient if * * * (b) the treatment is administered in an emergency when the physician reasonably believes that no one competent to consent can be consulted and that a reasonable person, wishing to safeguard the welfare of the patient, would consent.”
The law that authorizes the use of physical force in this type of situation would certainly not denominate the same as an arrest.
Since the defendant was not arrested, the rule that the accidental finding of contraband in a defendant’s clothing does not constitute an illegal search comes into play.
In People v Capra (17 NY2d 670) the defendant was brought to the hospital suffering injuries, a neurologist removed the defendant’s shoes and socks in order to test the soles of the defendant’s feet, a packet fell out of the defendant’s right sock which the attending physician determined to contain heroin, the doctor gave the packet to a nurse, the police were then called and the police arrested the defendant for the unlawful possession of a narcotic drug. The Court of Appeals held that the accidental finding of heroin in the defendant’s clothing did not constitute an illegal search or a disclosure of information acquired in a professional capacity by a physician from a patient.
The similarity between the two cases is obvious, and a similar result should apply.
However, the acquisition of the handgun from the defendant can be sustained on another theory, even assuming that Dr. Elio in fact illegally arrested the defendant.
The "arrest” by Dr. Elio of the defendant pursuant to the Mental Hygiene Law, if in fact it was an arrest, certainly was not a valid arrest. Sections 9.41, 9.43 and 9.45 of that statute authorize the police, the courts and the directors of community services, respectively, to take into custody or have taken into custody any person who appears to be mentally ill and is conducting himself in a manner which is likely to result in serious harm to himself or others. Obviously, the *766 doctor was not a party designated in those categories, and further, the defendant’s resistance to treatment cannot be equated to mental illness (see, Thomas v Culberg, 741 F Supp 77). While arrest by a private citizen for an offense is permitted by both statute (CPL 140.30) and case law (People v Foster, 10 NY2d 99, cert denied 371 US 881), conduct equivalent to mental illness which can result in custody under the Mental Hygiene Law cannot be considered an "offense” (Penal Law § 10.00 [1]; see, United States v Swarovski, 557 F2d 40).
Thus, Dr. Elio, either in his medical capacity or private capacity, possessed no authority to arrest the defendant.
On the other hand, a police officer is authorized by section 9.41 of the Mental Hygiene Law to take a mentally ill person into custody. This provides no solace to the defendant, because if there were an arrest, it was effectuated primarily by Dr. Elio and hospital security; Officer Holmes’ participation was minimal (see, People v Ray, 65 NY2d 282; People v Brown, 178 AD2d 484; People v Calinda, 83 Misc 2d 520).
Since the police officer did not arrest the defendant, this entire scenario consisted of the actions of private citizens.
The maxim is well established that the constitutional protection against unlawful searches and seizures does not apply to searches conducted by private citizens (People v Horman, 22 NY2d 378, cert denied 393 US 1057), unless such individuals were acting either at the direction of or in cooperation with the police at the time of the search (People v Cooper, 174 AD2d 770). Neither the doctor and the security personnel who restrained the defendant, nor the nurse who recovered the handgun, were complying with the direction or in cooperation with the police officer.
Thus, assuming there was an illegal arrest, the discovery of the handgun by the nurse as the result of the illegal arrest was the act of a private citizen, which is not constitutionally prohibited.
Accordingly, the application of the defendant to suppress the handgun is denied.

. This case is cited instead of People v Yukl (supra) and its progeny because Yukl and the decisions following it refer to "custody” and not "arrest.”

. This can be inferred from the dissent (at 23) which was based in part upon the officer’s testimony that he had effected an arrest, an interpretation the majority chose to ignore.