OPINION OF THE COURT
Eugene L. Nicandri, J.
Defendant stands indicted in a five-count indictment charging manslaughter, second degree; criminal possession of a controlled substance, fourth degree; criminal possession of a controlled substance, seventh degree (2); and criminal possession of a hypodermic instrument.
A pretrial suppression hearing was conducted before me on May 27, 1997, concerning certain items which police officers obtained from the defendant while he was being treated for personal injuries at the Gouverneur Hospital.
On February 15, 1996, defendant was involved in a two-car accident on SR 11 in the Town, of DeKalb. Investigation at the scene indicated that the defendant’s vehicle pulled into the opposite lane of travel, striking another vehicle head on and killing its operator. Defendant sustained serious injuries. Rescue personnel took defendant to the hospital before police reached the accident scene. Trooper Caldwell was dispatched to the hospital to observe the defendant who was believed to be at fault in the fatal accident, and who at the very least was believed to have failed to keep right in violation of the vehicle and traffic laws of the State.
Upon arriving at the hospital Trooper Caldwell found defendant in an emergency treating room being attended by emergency personnel. While waiting in the room for an opportunity to talk to the patient about the accident he observed the hospital people struggling with the patient to get an IV started, and also to remove clothing so that they could assess his injuries without moving him. The Trooper left the room to call his station and report his status. The officer was called back into the treating room to try and calm the defendant, since he was struggling and resisting medical treatment. The hospital staff first tried to cut defendant’s jacket off, and then imaged his cervical status. After deciding that the defendant could be moved without further injury, the staff removed his jacket. As they did so, a syringe and spoon fell out of the jacket. *484 Concerned about what substances the defendant might have ingested, in terms of potential interaction with any treatment medication, hospital personnel on their own initiative searched defendant’s jacket pocket, found some loose pills (two handfuls) and some prescription bottles of pills.
They then brought the syringe, the spoon, the pills and the bottles to the police. At the police request they provided a brown envelope and the found items were placed inside and thereafter remained in police custody. Subsequently, the pills and prescription bottle contents were later tested by the police, but not by the hospital. Some of the crimes charged in this indictment are based upon the tested contents of the various pills taken from defendant.
Defendant urges suppression on two theories: firstly, that the taking of possession of the items sought to be suppressed was the result of an illegal seizure, under the State and Federal Constitutions; and secondly, that the ultimate testing of the pills seized was a separate illegal search which also violated defendant’s cognizable right of privacy under the Federal (Fourth Amend) and State (art I, § 12) Constitutions.
Specifically, defendant argues that the police were required to obtain a warrant both to seize and to search (chemically test) the defendant’s property. It is conceded that no warrant was obtained in this case.
"The classic statement of the policy underlying the warrant requirement of the Fourth Amendment is that of Mr. Justice Jackson, writing for the [Supreme] Court in Johnson v. United States, 333 U. S. 10, 13-14:
" 'The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate’s disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people’s homes secure only in the discretion of police officers * * * When the right of privacy must reasonably yield to the right of search is, as a *485 rule, to be decided by a judicial officer, not by a policeman or government enforcement agent.’ ”[1]
There are, of course, some familiar exceptions to the presumptive requirement that a warrant be obtained,[2] where the circumstances are exigent; the items are in plain or open view; the items are contraband or are inherently dangerous; or they are within the "grabbable area” near defendant, such that a police officer has a reasonable concern for his own safety, justifying a limited search to prevent the accosted person from reaching for a gun; or pursuant to a lawful arrest; or as part of an inventory search after a lawful vehicle impoundment. As the Supreme Court noted in Arkansas v Sanders (442 US 753, 758 [1979], quoting Coolidge v New Hampshire, 403 US, at 481, supra):
"The mere reasonableness of a search, assessed in the light of the surrounding circumstances, is not a substitute for the judicial warrant required under the Fourth Amendment. * * *
" 'The warrant requirement * * * is not an inconvenience to be somehow "weighed” against the claims of police efficiency. It is, or should be, an important working part of our machinery of government’ ”.
In Sanders (supra), police legitimately stopped a taxi and searched it, and a locked suitcase inside it, for contraband. Citing its earlier holding in United States v Chadwick (433 US 1 [1977]), the Court held that even though the police had probable cause to stop the vehicle and to search it, they still needed a warrant to search the suitcase found in the vehicle. The Court said that the police should have taken the suitcase to the station and obtained a search warrant before opening it. "[A]n officer’s authority to possess a package is distinct from his authority to examine its contents.”[3]
Along similar lines, in People v Roman (53 NY2d 39 [1981]), the Court of Appeals held that the right of police to do an inventory search on a properly impounded vehicle did not include the right to search the contents of a semiopaque cigarette case found during the search. It did not appear to be contraband; nor was it inherently dangerous. There was also *486 no reason why the items couldn’t safely be stored pending issuance of a search warrant.
In People v Roth (66 NY2d 688 [1985]) the Court held that an officer was not justified in removing papers from defendant’s jacket pocket on the officer safety/fear of weapons exception to the warrant requirement. The plain view exception also didn’t apply, because the discovery was not inadvertent.[4] Under the plain view doctrine, police may validly seize an object without a warrant if they are lawfully in a position from which to view it, and its incriminating character is immediately apparent and the officers have a lawful right of access to the object itself. (Minnesota v Dickerson, 508 US 366 [1993], supra; see also, discussion in Jones v State, 648 So 2d 669 [Sup Ct, Fla 1994] [death penalty affirmed despite harmless error on facts of that case arising from violative warrantless search of defendant’s clothing and personal effects seized from hospital room].)
In People v Adler (50 NY2d 730 [1980]) the Court of Appeals held that a warrantless search of a parcel was valid where an airline employee searched the package in another city for reasons pertaining to airline procedures, then turned the package over to police in that city. Those police tested the contents, found controlled substances, marked and resealed the package, and notified police in New York (the destination State). The package was returned to the carrier, and sent to New York. There, before delivery, New York police again had the contents of the package tested, then again resealed it, and arrested defendant upon her claiming the package. The court notes that the Fourth Amendment prohibits unreasonable searches, not all searches, and that searches by private parties do not trigger the Fourth Amendment (People v Gleeson, 36 NY2d 462), unless the search is so intertwined with governmental activity as to lose its "private” character. (People v Esposito, 37 NY2d 156, 160; People v Elliott, 131 Misc 2d 611 [Sup Ct, Queens County 1986].) In Adler there was no governmental involvement until after the private search revealed the probable contraband. Since the New York police search was no more intrusive than the private search, the warrantless search was upheld. Along similar lines, see People v Acosta (198 AD2d 285 [2d Dept 1993]). The distinction between these cases on the one hand, and Walter v United States (supra) on the other is that in Walter the police search was more intrusive than the initial private search.
*487 In People v Pettinato (126 Misc 2d 979 [Sup Ct, NY County 1984]) the court denied suppression of white pills discovered by a private security guard who searched defendant’s zippered bag as he was leaving a university medical center. The area where the search was conducted was posted with signs notifying the public that private packages were subject to search. Upon passing that sign and entering the medical center, the defendant lost his privacy right in the contents of the bag, and did not reacquire it when the guard rezipped the bag. The later police search of the content of the pills therefore did not violate the warrant requirement, because the privacy interest had already been given up.
On the other hand, in State v von Bulow (475 A2d 995, cert denied 469 US 875 [1984]), the Rhode Island Supreme Court reversed and ordered a new trial because of a warrant violation. There the son of defendant’s wife found a black bag in the defendant’s closet, took the bag and gave it to police, who then tested the medication inside the closed bag. This, said the court, was a significant extension of the scope of the earlier private search by the stepson. (See, Annotation, Search and Seizure: necessity that police obtain warrant before taking possession of, examining, or testing evidence in search by private person, 47 ALR4th 501 [New York cases cited there include People v Adler, supra, and People v Pettinato, supra].)
In People v Watt (118 Misc 2d 930 [Sup Ct, NY County 1983]), the court suppressed defendant’s bloodstained clothing which police obtained from the hospital while defendant was undergoing surgery. The court found that defendant had a possessory interest in the clothing, and that the hospital was a mere bailee of the clothing during defendant’s stay, and therefore lacked authority to turn it over to police or to consent to its testing. There was no indication that defendant intended permanently to discard his clothing, soiled though it was, so his privacy interest was not diminished simply due to his presence at the hospital. The court also rejected the prosecution attempt to justify the seizure on exigent circumstances grounds. Although the People did establish probable cause to search the clothing, that is not enough, and they failed to show that the clothing was about to disappear. Watt has been cited with approval in People v Jordan (187 Mich App 582, 468 NW2d 294 [1991]).[5]
*488 The circumstances under which police first come into contact with the item they wish to seize will of course have a bearing on the admissibility of the item if it is obtained without a warrant. Thus, for example, in People v Natal (75 NY2d 379 [1990]) a defendant reporting to jail for incarceration had no reasonable privacy expectation in either the appearance of the clothing which he wore to jail, or in the contents of his pockets which were searched when his clothing and personal effects were inventoried for storage during his pretrial detention. The fact that the jail’s possession of the clothing was a bailment during defendant’s incarceration did not prevent the yielding of the separate privacy interest in the clothing. Moreover, the court limited, the trial use of the clothing to its outward appearance, and not for further search and experimentation. (75 NY2d, at 384.)
In another situation factually distinguishable from the case at bar, a handgun fell out of defendant’s pocket while his sleeve was being rolled up for a blood pressure check during treatment at the hospital. An officer was called to assist the doctor in restraining the struggling defendant, after the doctor purported to "arrest” the patient. The court held that the doctor’s "arrest” was not an arrest, but that the discovery of the handgun was the result of a private search. Suppression was therefore denied. (People v Crank, 155 Misc 2d 762 [Sup Ct, Monroe County 1992].) Similarly unobjectionable was a treating physician’s inadvertent discovery of a packet containing heroin, hidden in defendant’s sock and discovered when the doctor removed defendant’s shoes to test the soles of his feet. (People v Capra, 17 NY2d 670 [1966].) In that case however, the attending physician, not the police, determined that the packet contained heroin.[6]
*489 In People v Hayes (154 Misc 2d 429 [Sup Ct, NY County 1992]) the court held that defendant had no reasonable expectation of privacy in the hospital, but did have such an interest in anything about his clothing worn at the hospital, other than its outward appearance which was visible to all. However, there was no exception to the warrant requirement to allow the subsequent testing results on the clothing to come into evidence.
Here there is no constitutional problem with the discovery, seizure and delivery to police of the syringe and the spoon. They fell out of the defendant’s pocket during treatment procedures at the hospital. The involvement of the police at that point was purely incidental. Similarly, there was no problem with the police possessing the pills, both loose and in the pill bottles, all from defendant’s pocket. These items were all delivered to the police as the result of a private search, and no Fourth Amendment problem arose (nor was there one under New York’s equivalent provision in article I, § 12 of the NY Constitution). The problem arose when the police later tested the pills without first obtaining a warrant allowing them to do so. The pills were already in police possession. There was no danger of their destruction or disappearance. There were no exigent circumstances as far as the testing was concerned. Under the previous cited cases, the fact that the police may very well have had probable cause to get a warrant to test the pills does not excuse their failure to do so. To hold otherwise would be to violate the dictates of Johnson v United States, Coolidge v New Hampshire and Arkansas v Sanders (supra) and their parallel State court holdings.
The motion to suppress the syringe and the spoon is therefore denied. The motion to suppress the pills — whether loose or in containers — is granted.

. Coolidge v New Hampshire, 403 US 443, 449.

. See, Minnesota v Dickerson, 508 US 366 (1993).

. (Walter v United States, 447 US 649, 654 [1980], citing Ex Parte Jackson, 96 US 727; Arkansas v Sanders, supra.) In Walter the Court held that the FBI exceeded the permissible scope of a warrantless seizure when it screened seized pornographic films. Possession of the films was itself permissible on the facts of the case.

. Inadvertent discovery is no longer a requirement for a valid plain view seizure under the Fourth Amendment. (Horton v California, 496 US 128 [1990].)

. Warrantless search of defendant’s clothing at hospital, in hospital’s temporary custody during defendant’s surgery, was not permissible under plain view, consent or exigent circumstances exceptions to the warrant *488 requirement, but was harmless error on the facts of the case. Jordan notes accord in New York in Watt (supra); in Pennsylvania in Commonwealth v Silo (480 Pa 15, 389 A2d 62 [1978], cert denied 439 US 1132 [1979], reh denied 440 US 969 [1979]); and in Virginia, in Morris v Commonwealth (208 Va 331, 157 SE2d 191 [1967]). Only Washington State is noted as holding a contrary view, in State v Smith (88 Wash 2d 127, 559 P2d 970 [1977], cert denied 434 US 876 [1977]).

. The court is also aware of People v Rosario (151 Misc 2d 1007 [Sup Ct, Queens County 1991]), holding that search of a defendant’s pants by a hospital aide in accordance with an established hospital procedure regarding inventory of an admitted patient’s property was reasonable, and therefore a foil packet of white powder was admissible when the aide turned it over to a hospital police officer. The court cannot discern from the opinion whether the hospital police officer was a private security guard of a law enforcement *489 official. Nor does the court discuss at all the difference between the initial encounter with the packet and the desire to test its contents, as separate search issues. The court therefore declines to follow the holding to the extent that it might otherwise be relevant.