OPINION OF THE COURT
Donald J. Mark, J.
This is an application by the defendant, who is charged with four counts of criminal possession of a controlled substance, pursuant to CPL 710.20 (1) and (3), to suppress alleged cocaine seized from his person and two apartments and to suppress a statement made to the police; he claims that the search warrants authorizing the search of his person, vehicle and two *541 apartments were not based upon probable cause and that his statement to the police was both involuntary and the product of an illegal arrest.
The First Search Warrant
The first search warrant was issued by a County Court Judge on September 24, 1998, and it authorized the search of the defendant, a 1980 Chevy, a 1984 Chevy and premises at 26 Mark Street for cocaine, drug paraphernalia, records and items demonstrating ownership of that premises.
The application for this search warrant by Officer Perez recited as follows:
That the confidential informant (whose reliability was adequately demonstrated) was fitted with a Kel-Kit Monitoring System, so that the affiant could monitor his/her conversations during the drug transactions.
That on the first occasion the confidential informant, at the instance of the affiant, was involved in a “controlled buy”[1] at premises “Y,” at which time the informant requested individual ‘X” to telephone the seller; individual ‘X” made a telephone call; later the defendant drove the 1980 Chevy to that address, where he sold the alleged cocaine to the informant; thereafter a police officer followed the defendant’s vehicle until the defendant entered premises at 26 Mark Street.
That on the second occasion the same drug transaction scenario was repeated, except that the defendant drove the 1984 Chevy to premises “Y;” thereafter a police officer followed the defendant’s vehicle until the defendant entered premises at 26 Mark Street.
That on the third occasion the same drug transaction scenario was repeated; prior to this occurrence, a police officer observed the defendant exit premises at 26 Mark Street, drive the 1980 Chevy to premises at 1889 Clifford Avenue, enter and exit that premises and then drive that vehicle to premises “Y,” at which time the above transaction took place.
That on the fourth occasion the same drug transaction scenario was repeated; prior to this occurrence a police officer *542 observed the defendant exit premises at 96 Lefrois Street, drive the 1984 Chevy to premises at 1889 Clifford Avenue, exit and enter that premises and then drive that vehicle to premises “Y,” at which time the above transaction took place.
That on other occasions police officers surveilled the defendant as he drove his vehicles until he entered premises at 26 Mark Street or 96 Lefrois Street.[2]
Although People v Hollins (221 AD2d 863) did not involve a search warrant, under very similar circumstances a motion to suppress cocaine and a gun located in the defendant’s vehicle was denied; there, the reliable confidential informant advised the investigator that the informant had been told that the defendant was at a certain residence with cocaine, that the resident was going to pay part of his past indebtedness for drug purchases by giving the defendant his stereo equipment, the investigator observed the defendant loading stereo equipment into his vehicle, and the investigator later stopped the defendant’s vehicle and searched it. An added ingredient, here, is that the confidential informant was electronically monitored, and all conversations involving the informant, individual “X” and the defendant were overheard by the affiant (see, People v Miner, 126 AD2d 798).
Thus, the first search warrant was based upon the requisite probable cause because the confidential informant was reliable, and the drug transactions were monitored by the police officer affiant (People v Dixon, 239 AD2d 944, lv denied 90 NY2d 904; People v Diaz, 231 AD2d 915, lv denied 89 NY2d 921).
The Events of September 30, 1998
The following evidence relative to the events of September 30, 1998 was adduced at the hearing:
That on that date from 7:00 p.m. Officer Cutt observed the defendant drive the 1984 Chevy to premises at 1889 Clifford Avenue, enter the outer door with a key, exit that premises, and drive west on Clifford Avenue; that the defendant was not observed entering any particular apartment in that building; that Officer Cutt radioed Officer Torres the route that the defendant was driving; that at 8:48 p.m. pursuant to a prior briefing and with knowledge that a search warrant had been is *543 sued, Officer Torres stopped the defendant’s vehicle, searched the defendant outside the vehicle, found suspected cocaine, arrested him and handcuffed him.
That Officer Torres radioed Officers Perez and Gerbino of his actions; that those officers requested that the defendant’s keys in the vehicle’s ignition be transported to them; that Officer Torres without asking the defendant’s consent arranged for the keys to be delivered to Officer Gerbino; that the two officers tried various keys at premises at 1889 Clifford Avenue until they entered the outer door, the door to apartment 2, and a locked room; that they did so without the defendant’s consent and without any inquiry as to other possible building tenants; and that this was done to make sure any occupant could not destroy any drugs that might be in the apartment.
That the officers did not observe any drugs in the apartment; that the apartment was guarded until a search warrant was secured; and that at 11:40 p.m. the search warrant was executed and suspected cocaine was discovered.
The Second Search Warrant
The second search warrant was issued by a City Court Judge on September 30, 1998 and it authorized the search of premises at 1889 Clifford Avenue, apartment 2, for cocaine, drug paraphernalia, records and items demonstrating ownership of that premises.
The application for this search warrant by Officer Perez replicated every .allegation in the first search warrant application.
The allegations in the application for the first search warrant in addition to the allegations in the application for the second search warrant[3] supporting the conclusion that the defendant possessed cocaine at premises at 1889 Clifford Avenue, apartment 2, were as follows: that on the third and fourth occasions the defendant entered and exited that location and then drove to premises “Y” where the drug transactions took place; that Ms. Gonzalez transferred telephone service from apartment 2 to premises at 96 Lefrois Street, upstairs apartment, where the defendant had an active account for gas and electric service; that based upon experience this shows that the defendant uses that female to receive telephone service at locations he controls; that the defendant entered and exited that *544 building just prior to his arrest at which time he possessed suspected cocaine on his person; and that the defendant’s keys opened three doors at that location.
Absent the allegations that the keys seized from the defendant fit the three doors, sufficient information was included in the application for the second search warrant to sustain it (People v Arnau, 58 NY2d 27 [after one purchase of cocaine from the defendant by an undercover officer who observed a quantity of the same in the defendant’s apartment, the police illegally entered the apartment and arrested the defendant; after securing the apartment they applied for a search warrant, relating only the observations of the undercover officer; held that the search warrant was valid, because no information in the application was derived from the illegal police activity]).
Thus, the second search warrant was based upon the requisite probable cause, because the application demonstrated that the confidential informant was reliable, and the drug transactions were monitored by the police officer affiant (People v Dixon, supra; People v Diaz, supra). In addition, the application demonstrated that the defendant was in possession of suspected cocaine immediately after leaving premises at 1889 Clifford Avenue on three occasions (see, People v Hollins, supra), and that the defendant was in control of that location, because of the relationship between him, Ms. Gonzalez, apartment 2 and premises at 96 Lefrois Street, upstairs apartment (see, People v Carey, 241 AD2d 748, lv denied 90 NY2d 1010).
Even if the reference to the keys in the second search warrant application were a necessary allegation, the search warrant would nevertheless be valid.
While at first blush it would appear that the keys could have been recovered on the basis of the first search warrant’s application to search the defendant’s vehicle, this is not the situation in the instant case, because the keys were not designated as items which could be seized (People v Baker, 23 NY2d 307; People v McCullars, 174 AD2d 118, appeal dismissed 80 NY2d 800).[4] However, assuming the keys were illegally seized, they would have inevitably been discovered by the police (People v Turriago, 90 NY2d 77, rearg denied 90 NY2d 936) as secondary evidence (People v Stith, 69 NY2d 313) during the booking *545 procedure after the defendant’s arrest[5] (People v Perel, 34 NY2d 462).
The Court of Appeals in People v Perel (supra, at 467) established the principle that “[t]he reason searches of a person and his immediate effects at a place of detention are permissible lies not in the fiction that they are incident to arrest but because of the maximum intrusion effected by an arrest and detention pending arraignment.” People v Natal (75 NY2d 379, 384, cert denied 498 US 862) reaffirmed this concept. People v Payne (233 AD2d 787) (relying on People v Natal and People v Perel), and People v Greenwald (90 AD2d 668) and People v Kleiner (172 Misc 2d 352) (both relying on People v Perel) sanctioned the seizure of items retrieved from a defendant during the booking process without a search warrant.
Thus, it is clear that items seized from a defendant at booking without a search warrant may be used as evidence, but the undecided issue is whether such items may also be used to further the investigation. People v Natal (supra, at 383) cited both United States v Edwards (415 US 800)[6] and 2 LaFave, Search and Seizure § 5.3 (b) (at 491-497), and found that the state of the Federal law was that such further investigation without a search warrant was permitted.[7] That decision, however, declined to determine if State constitutional law would coincide, because the items involved were “not sought for further searching or experimentation” (supra, at 384).
However, it would seem that the Court of Appeals has already indirectly passed on this question. In People v Adler (50 NY2d 730), an airline employee in California turned over a suspicious package to police in that State; the police had the package analyzed and the presence of narcotics was confirmed; the police in New York City were alerted, and after they intercepted the package, they had the drugs analyzed again; and when the defendant took possession of the package, she was arrested for drugs in the package and on her person. The defendant’s motion to suppress was denied, because the *546 continuous possession of the package by both police agencies emanated from the valid prior private search, and “The police did not go beyond the private search when they examined the contents of the package” {supra, at 737).
Nevertheless, People v Payne (supra) is the only case which apparently followed the Federal law in this area.[8] There, while the defendant “was being processed by the police, officers seized the sneakers he was wearing,” and without a search warrant the tread was compared to the prints at the scene of the burglary (supra, at 787). As previously indicated, this case cited both Natal (supra) and Perel (supra) and then stated “the subsequent examination and testing of items seized at the time of the arrest is permissible as a lesser-related intrusion incident to the arrest already effected” {supra, at 787; emphasis added). Despite this language, the sneakers were actually seized during the booking process, and it is difficult to rationalize how the sneakers could be seized incident to arrest (see, People v Smith, 59 NY2d 454).
Since People v Payne (supra) is the latest pronouncement of an appellate court on this subject, it becomes binding upon this court (People v Shakur, 215 AD2d 184; People v Brisotti, 169 Misc 2d 672, lv denied 89 NY2d 940). As the keys would have inevitably been discovered during this booking process, their seizure at the location of the defendant’s arrest, even if illegal, was not thereby invalidated, and the use of the keys to enter the defendant’s apartment was proper.
Therefore, the reference in the second search warrant to the defendant’s keys opening the doors to the building and the apartment to show the defendant’s connection to that location was proper, and as a result that search warrant was supported by the necessary probable cause (see, People v Harris, 62 NY2d 706 [allegations, that keys found near victim’s body fit the defendant’s mailbox together with other information was sufficient to authorize the issuance of a search warrant for the defendant’s apartment]).
Accordingly, the application to suppress the evidence seized by virtue of the two search warrants is denied.
*547 The Defendant’s Statement
The following evidence relative to the defendant’s statement to the police was adduced at the hearing:
That the testimony of Officer Alvarado was to the effect that on October 1, 1998, at 12:43 a.m., the officer commenced his interview of the defendant, and he ascertained that the latter did not understand English; that the defendant indicated he could read and write Spanish “more or less,” and that he had a ninth grade education in the Dominican Republic; that the officer read the defendant his constitutional rights from a rights card written in Spanish (exhibit No. 3), which differed somewhat from the rights card written in English (exhibit No. 4); that the officer asked the defendant the waiver questions in Spanish, and the defendant answered “Si” (“Yes”) to both questions; that the officer reduced his conversation with the defen-dont in Spanish to a writing in English (exhibit No. 5), and he thereafter read the statement to the defendant in Spanish; and that after the defendant made one correction, he signed the statement.
That the testimony of the defendant essentially paralleled the testimony of Officer Alvarado, except that when he responded to the waiver questions he answered that he understood “some things;” that the officer did not question him further as to what he did not understand; that he did not understand the right about an assigned attorney (paraphrased), and he interpreted that to mean he had to obtain his own attorney; and that he did not know what he was signing, but he signed the statement because the officer told him to sign.
That exhibit No. 3 was not an exact translation of exhibit No. 4, and that the officer did not translate exhibit No. 4 into Spanish for the defendant.
That the waiver A question in exhibit No. 3 is basically the same as the waiver 1 question in exhibit No. 4.
That the waiver B question in exhibit No. 3 reads “Do you desire to speak to us now?”, and the waiver 2 question in exhibit No. 4 reads “Do you agree to give up your rights and talk with me now?”
The defendant complains specifically that right 1 differs from right A, and that right 4 differs from right D.
Right 1 reads “You have the right to remain silent — you do not have to say anything if you don’t want to,” while right A reads “You have the right not to speak, and not to answer any *548 questions.” Right A adequately conveyed to the defendant the same right as right 1 (see, People v Smith, 217 AD2d 221, lv denied 87 NY2d 977).
Right 4 reads “If you can’t pay for a lawyer, one will be given to you before any questioning if you wish,” while right D reads “If you cannot pay for a lawyer, the court will get a lawyer if you wish for any interrogation.” Right D adequately conveyed to the defendant the same right as right 4 (see, People v Bartlett, 191 AD2d 574, lv denied 81 NY2d 1010).
The omission in the waiver B question of the “Do you agree to give up your rights?” is not fatal to a valid waiver by the defendant (see, People v Sirno, 76 NY2d 967 [defendant may implicitly waive his rights by willingly proceeding to answer questions after he is advised of his constitutional rights and understands them]; People v Smith, supra [an explicit verbal waiver is not required, as an implicit waiver may be inferred from the circumstances]).
Accordingly, the application to suppress the defendant’s statement is denied.

. A “controlled buy” is the situation where a police officer searches a confidential informant to ensure that the latter possesses no drugs, gives the informant funds to purchase drugs at a specific location, observes the informant enter and exit that location, the informant immediately hands over to the officer the drugs he has purchased and the informant describes the individual from whom he purchased the drugs (see, People v Ferron, 248 AD2d 962, lv denied 92 NY2d 879).

. The dates, locations, individual descriptions and details of each occurrence alleged in the search warrant application have been deliberately omitted to safeguard the identity of the confidential informant; all the dates referred to in the application occurred prior to September 30, 1998.

. Again, certain details alleged in this search warrant application have been deliberately omitted to safeguard the confidential informant’s identity.

. No other theory relevant to this search warrant is applicable.

. This court may take judicial notice of a matter on its own motion (People v Langlois, 122 Misc 2d 1018), and it does so as to what the booking process entails (see, People v Patterson, 169 Misc 2d 787).

. This decision permitted paint chips in the defendant’s clothing seized at booking to be compared to paint chip samples taken from a window at the burglarized building.

. United States v Grill (484 F2d 990) is a somewhat similar example; there a key found on defendant’s person and placed with inventoried property later retrieved was used to open a lock on a duffle bag when there was reasonable cause to connect the defendant with the bag.

. Both People v Rodgers (173 Misc 2d 482) and People v Hayes (154 Misc 2d 429), although they did not involve items seized during processing, interpreted Natal (supra) to prohibit testing without a search warrant of items coming lawfully into possession of the police, but, citing Adler (supra), and without citing Natal, Rodgers was reversed (People v Rodgers, 248 AD2d 805, 806).